(No. 24885.—

IN RE THOMAS D. HUFF, Attorney, Respondent.

*Opinion filed February 15, 1939—Rehearing denied April 5, 1939.*

CHARLES LEVITON, *amicus curiae.*

FRANKLIN J. STRANSKY, (THOMAS D. HUFF, *pro se*, HERBERT A. HUFF, and CRITTENDEN C. JARVIS, of counsel,) for respondent.

Mr. JUSTICE JONES delivered the opinion of the court:

The allegations of the complaint in this cause, filed with the committee on grievances of the Chicago Bar Association, against Thomas D. Huff, are substantially the same

as those in *In re Ellis, post,* p. 113, and *In re Tuttle, post,* p. 153. The charges are based on the testimony of Huff in the case of *United States* v. *William H. Malone,* in the United States district court, in which Malone was convicted of income tax evasion. It ·is claimed respondent paid substantial portions of fees received by him for representing the Chicago Surface Lines before the Illinois State Tax Commission, to Malone, who was chairman of the commission, ostensibly as campaign contributions, but, in fact, as a method of bribing public officials by paying for favorable rulings on tax matters and for resulting tax reductions. The complaint also charged respondent with conduct tending to defeat the administration of justice and to bring the courts and the legal profession into disrepute. The committee on grievances, sitting as commissioners of this court, recommended respondent's disbarment, and he has filed exceptions to its report.

Respondent, a practicing lawyer since 1895, had been acquainted with Malone for over thirty years, had represented him as his personal attorney and Malone had sent many valuable clients to him. He actively participated in Malone's political campaigns, and their relationship was close and intimate.

Respondent and Horace W. Cook practiced law as partners for thirty-five years, until Cook died June 7, 1930. Until his death, Cook, alone, had represented the Chicago Surface Lines before the Illinois State Tax Commission for several years. In 1927, the Chicago Surface Lines paid the firm of Huff & Cook $25,000 for services before the State Tax Commission, in 1928, $25,000, and in 1929, $20,000. Of these sums a substantial portion was withdrawn from the bank, in cash, shortly after it was received. The evidence indicates this money was paid to Malone, but it was not shown that respondent knew of this and he denies that he knew of it until after Cook's death. In each of these years half of the amount so withdrawn was charged

on the partnership books to respondent, but he disclaims any knowledge of it until after Cook's death, explaining that he did not look at the books once a year. At the hearing before the commissioners he testified to many other misappropriations by Cook which he did not discover until after Cook's death. We think the charge that respondent participated in the payments to Malone for the years 1927 to 1929, inclusive, is not sustained by clear and convincing evidence.

For the year 1930 respondent represented the Chicago Surface Lines before the State Tax Commission. He testified at the Malone trial that he went to see Malone in August, 1930; that Malone told him the assessment would be substantially the same as in 1929, and that respondent endeavored to obtain a reduction. While they were discussing the tax assessment, Malone said: "I assume that this matter will be handled the same as heretofore." Respondent asked him what he meant by that and Malone replied: "Well, Mr. Cook has made campaign contributions and I will expect you to do the same thing." Respondent again asked him what he meant and Malone answered: "Well, Mr. Cook made a campaign contribution of $15,000 the year before." He stated he was going to run for Governor and would need a lot of money.

In September, after this conversation, the tax letter came and there was no reduction in the assessment. Respondent went to see Malone and protested that Malone "was a hell of a fine friend," and Malone said: "I can't do anything for you. And I am not going to do anything for you. They are watching me like a hawk watches a chicken. I just can't make any reduction." Finally, Malone reduced the assessed value $100,000, which amounted to a tax reduction of about $6000.

On September 11 respondent sent a bill to the Chicago Surface Lines and a few days later received a check for $20,000. He deposited it in a bank and drew a check against

it for $15,000, payable to himself, and received the proceeds in cash. He drew this check because he expected to make a campaign contribution to Malone out of the fee. He did not know at that time how large a contribution he would make, but he had it in mind that he would contribute as little as possible. If Malone had suggested $15,000 he would have given it to him.

He went to see Malone and told him that he was "starting from scratch" building a new business; that he could not take a dollar out of the Huff & Cook account because the estate was being "closed up," and that $10,000 was all he could give Malone for his campaign fund. Malone replied: "Well for old friendship's sake, that will be satisfactory." Respondent gave him $10,000, in cash. He paid an income tax on the entire $20,000.

Respondent contends this $10,000 was a voluntary campaign contribution, made because of his long friendship with Malone, because of gratitude for past favors he had received from Malone, and because he hoped to be rewarded if Malone were elected Governor. We cannot agree with this view, after carefully studying his own testimony. He must have known that Malone was not merely making a request for a voluntary contribution. Malone "assumed" respondent would make the contribution and informed him he would be "expected to." Respondent did not refuse but silently acquiesced. After he received the fee, respondent was prepared to pay whatever Malone asked but intended to pay as little as possible. He appealed to Malone to settle for $10,000 and Malone said, because of their friendship, that would be satisfactory. From this it is clear the gift was not voluntary. As the commissioners in their report well said: "A gift is a gift and the donor does not plead with the donee to permit him to reduce the size of the gift."

It also seems clear that respondent realized the connection between the contribution to Malone and the consideration his client would receive from the State Tax Commis-

sion, when he remarked, after their understanding respondent was to contribute a part of his fee, that Malone was "a hell of a fine friend" and Malone defended by saying he was unable to reduce the assessment because he was being watched so closely. Respondent admitted he could not have made the contribution if he had not received the fee.

The arguments that the transcript of respondent's testimony in the Malone trial should not have been admitted in evidence, that the acts of misconduct charged are so old that they are stale claims, that much weight should be given to the fact that for forty-three years respondent's reputation has been good, both before and for several years after the acts complained of, are answered by our holdings in *In re Ellis, supra,* and *In re Tuttle, supra.*

It is unnecessary for us to decide whether the crime of bribery has been proved. Such unprofessional and improper conduct has been so clearly and convincingly established that disciplinary methods must be resorted to. It is, therefore, ordered that respondent, Thomas D. Huff, be suspended from the bar of this State for a period of two years.                                      *Respondent suspended.*